FILED
2011 FEB 15 PM 3:33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CHARLES ACHIKE AGBU,<br>　　aka "Charles A. Agbu,"<br>　　aka "Charles Agbu,"<br>　　aka "Charles," and<br>OBIAGELI BROOKE AGBU,<br>　　aka "Obiageli Brook Agbu,"<br>　　aka "Obiageli B. Agbu,"<br>　　aka "Obiagele B. Agbu,"<br>　　aka "Obiagele,"<br>　　aka "Brooke,"<br>　　aka "Ivon,"<br><br>　　　　Defendants. | CR No. CR 11 00134<br><br>**I N D I C T M E N T**<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c): Forfeiture] |

　　The Grand Jury charges:

                         COUNT ONE

                      [18 U.S.C. § 1349]

A.　　INTRODUCTORY ALLEGATIONS

　　At all times relevant to this Indictment:

The Conspirators

1. Defendant CHARLES ACHIKE AGBU ("C. AGBU"), also known as ("aka") "Charles A. Agbu," aka "Charles Agbu," aka "Charles," owned and operated a durable medical equipment ("DME") supply company called Bonfee Inc., which did business as Bonfee Medical Supplies ("BONFEE"). Defendant C. AGBU submitted applications to Medicare to obtain and maintain a Medicare provider number for BONFEE.

2. BONFEE's offices were located at 550 East Carson Plaza Drive, Suite 113, Carson, California, within the Central District of California.

3. Defendant OBIAGELI BROOKE AGBU ("O. AGBU"), aka "Obiageli Brook Agbu," aka "Obiageli B. Agbu," aka "Obiagele B. Agbu," aka "Obiagele," aka "Brooke," aka "Ivon," who is C. AGBU's daughter, owned and operated a DME supply company called Ibon, Inc. ("IBON"). Defendant O. AGBU submitted applications to Medicare to obtain and maintain a Medicare provider number for IBON.

4. IBON's offices were located at 550 East Carson Plaza Drive, Suite 107, Carson, California, within the Central District of California.

5. A co-conspirator known to the Grand Jury ("CC1") was associated with individuals who owned and operated fraudulent medical clinics that generated false and fraudulent prescriptions and other documents for power wheelchairs and other DME. CC1 and others provided and sold the false and fraudulent prescriptions and documents to the owners and operators of DME supply companies, including BONFEE.

6. Between in or about July 2005 and in or about February 2011, BONFEE and IBON collectively submitted to Medicare claims totaling approximately $11,094,918.59.

The Medicare Program

7. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

8. CMS contracted with private insurance companies to (a) certify DME providers for participation in the Medicare program and monitor their compliance with Medicare standards; (b) process and pay claims; and (c) perform program safeguard functions, such as identifying and reviewing suspect claims.

9. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

10. DME companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

11. To obtain payment from Medicare, a DME company first had to apply for and obtain a provider number. By signing the provider application, the DME company agreed to abide by Medicare rules and regulations, including the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)), which, among other things, prohibits the payment of kickbacks or bribes for the referral of Medicare

beneficiaries for any item or service for which payment may be made by the Medicare program.

12. If Medicare approved a provider's application, Medicare would assign the provider a Medicare provider number, enabling the provider (such as a DME company) to submit claims to Medicare for services and supplies provided to Medicare beneficiaries.

13. To obtain and maintain their Medicare provider number billing privileges, DME suppliers had to meet Medicare standards for participation. The Medicare contractor responsible for evaluating and certifying DME providers' compliance with these standards was Palmetto GBA ("Palmetto").

14. From in or about January 2003 through in or about September 2006, CIGNA processed and paid Medicare DME claims in Southern California. From in or about October 2006 onward, Noridian Administrative Services ("Noridian") performed this function.

15. Most DME providers, including BONFEE and IBON, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

16. Medicare paid DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be paid by Medicare.

17. To bill Medicare for DME it provided to a beneficiary, a DME provider was required to submit a claim (Form 1500) to

Noridian or CIGNA. Medicare required claims to be truthful, complete, and not misleading. In addition, when a claim was submitted, the provider was required to certify that the services or supplies covered by the claim were medically necessary.

18. Medicare required a claim for payment to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date the DME was provided, and the name and unique physician identification number ("UPIN") of the physician who prescribed or ordered the DME.

19. Medicare had a co-payment requirement for DME. Medicare reimbursed providers 80% of the allowed amount of a DME claim and the beneficiary was ordinarily obligated to pay the remaining 20%.

B. THE OBJECT OF THE CONSPIRACY

20. Beginning in or about July 2005, and continuing through on or about February 17, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants C. AGBU and O. AGBU, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C. THE MANNER AND MEANS OF THE CONSPIRACY

21. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. Individuals known as "marketers" obtained Medicare beneficiaries' information by offering them medically-unnecessary power wheelchairs, hospital beds, orthotics, and other DME. In some cases, the marketers took or referred the beneficiaries to

fraudulent medical clinics, doctors' offices, and other locations where fraudulent prescriptions and medical documents were generated using the beneficiaries' personal information and HICNs.

b. Defendant C. AGBU, defendant O. AGBU, and their co-conspirators would acquire these false and fraudulent prescriptions and other documents from the medical clinics, doctors' offices, and other sources for the purpose of using these prescriptions and documents to submit and cause the submission of false and fraudulent claims to Medicare on behalf of BONFEE and IBON.

c. Defendant C. AGBU and his co-conspirators would also buy false and fraudulent prescriptions and other documents for power wheelchairs and other DME from CC1 and others for the purpose of using the false and fraudulent documents to submit and cause the submission of false and fraudulent claims to Medicare on behalf of BONFEE.

d. After acquiring the false and fraudulent documents from CC1 and other sources, defendants C. AGBU and O. AGBU would submit and cause the submission of false and fraudulent claims to Medicare for power wheelchairs, power wheelchair accessories, orthotics, hospital beds, and other DME purportedly provided by BONFEE and IBON to Medicare beneficiaries.

e. Defendants C. AGBU and O. AGBU would submit and cause the submission of claims to Medicare for power wheelchairs, orthotics, hospital beds, and other DME that were not provided to the beneficiaries or that the beneficiaries did not want or medically need. In some cases, defendants C. AGBU and O. AGBU

would claim to Medicare that BONFEE and IBON had provided the beneficiaries with expensive power wheelchairs, orthotics, or other DME when, in fact, BONFEE and IBON had provided the beneficiaries with less expensive DME.

COUNTS TWO THROUGH TEN

[18 U.S.C. §§ 1347, 2(b)]

A. <u>INTRODUCTORY ALLEGATIONS</u>

22. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 19 above as though set forth in their entirety here.

B. <u>THE SCHEME TO DEFRAUD</u>

23. Beginning in or about July 2005, and continuing through on or about February 17, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants C. AGBU and O. AGBU, together with CC1 and others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C. <u>MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD</u>

24. The fraudulent scheme operated, in substance, as described in Paragraph 21 of this Indictment, which is hereby incorporated by reference as if stated in its entirety here.

D. <u>THE EXECUTION OF THE FRAUDULENT SCHEME</u>

25. On or about the dates set forth below, within the Central District of California and elsewhere, the defendant identified below, together with others known and unknown to the

Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully caused to be submitted to Medicare the following false and fraudulent claims for payment:

| COUNT | DEFENDANT | CLAIM NUMBER | APPROX. DATE SUBMITTED (DME COMPANY) | APPROX. AMOUNT OF CLAIM | NATURE OF CLAIM |
|---|---|---|---|---|---|
| TWO | C. AGBU | 106356842806000 | 12/22/06 (BONFEE) | $6,722 | Power wheelchair and accessories for Lin C. |
| THREE | C. AGBU | 107226847325000 | 8/14/07 (BONFEE) | $5,910 | Power wheelchair and accessories for Nghia N. |
| FOUR | C. AGBU | 107226847328000 | 8/14/07 (BONFEE) | $5,910 | Power wheelchair and accessories for Sang D. |
| FIVE | C. AGBU | 108354831047000 | 12/19/08 (BONFEE) | $6,500.46 | Power wheelchair and accessories for Carmen M. |
| SIX | C. AGBU | 109093837855000 | 4/03/09 (BONFEE) | $6,393 | Power wheelchair and accessories for Pedro A. |
| SEVEN | O. AGBU | 109254844880000 | 9/11/09 (IBON) | $218.03 | Hospital bed for Francisco J. |
| EIGHT | O. AGBU | 109254844882000 | 9/11/09 (IBON) | $1,264.35 | Orthotic equipment for Francisco J. |
| NINE | O. AGBU | 110029800852000 | 1/29/10 (IBON) | $915 | Orthotic equipment for Arnulfo H. |
| TEN | O. AGBU | 110103805092000 | 4/13/10 (IBON) | $1,214 | Orthotic equipment for Celia G. |

## COUNT ELEVEN

[18 U.S.C. § 982(a)(7), 21 U.S.C. § 853,
and 28 U.S.C. § 2461(c)]

26. The Grand Jury hereby realleges and incorporates by reference counts one through ten of this Indictment as though fully set forth herein, for the purpose of alleging forfeiture, pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

27. Counts One through Ten of this Indictment allege acts or activities constituting federal health care fraud offenses pursuant to Title 18, United States Code, Sections 1347 and 1349. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a federal health care fraud offense, defendants C. AGBU and O. AGBU shall forfeit to the United States of America:

    a. All right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense; and

    b. A sum of money equal to the total amount of gross proceeds derived from such offense.

28. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), a defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph 27, if, by any act or omission of said defendant, the property described in paragraph 27, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or

deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section

HANK B. WALTHER
Deputy Chief, Fraud Section
United States Department of Justice

CHARLES LA BELLA
Deputy Chief, Fraud Section
United States Department of Justice

JONATHAN T. BAUM
Trial Attorney, Fraud Section
United States Department of Justice